UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMIE L. MARSHALL, as Administrator and Personal Representative of the Estate of Christopher J. Marshall, and on her behalf individually et al., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:25-cv-01410-SRC |
| MERCY HOSPITAL EAST COMMUNITIES et al., | ) ) ) ) | |
| Defendants. | ) | |

**<u>Memorandum and Order</u>**

Jamie L. Marshall—administrator and personal representative of the deceased Christopher J. Marshall—and other statutory beneficiaries collectively brought this lawsuit against Mercy Hospitals East Communities, Dr. Ryan L. Kroeger, Dr. Tariq Halasa, and Doe Defendants 1–5 in Missouri State Court.  Defendants removed this case to this Court before they were served, in a practice known as "snap removal," and Plaintiffs timely filed a Motion to Remand.  Defendants then filed a Motion to Dismiss, or in the alternative, a Motion for More Definite Statement.  As discussed below, the Court denies Plaintiffs' motion and grants in part Defendants' motion.

## I.      Plaintiffs' Motion to Remand

### A.      Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  Under 28 U.S.C. § 1332(a), the statute authorizing diversity jurisdiction, "district courts shall have original jurisdiction of all civil actions where the matter . . . is between . . . citizens of different States."  Removal based on diversity-jurisdiction grounds is proper, except when "any of the parties in

interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). This exception is called the "forum-defendant rule." *See Holbein v. TAW Enters., Inc.*, 983 F.3d 1049, 1053 (8th Cir. 2020). "When an action is removed improperly, the plaintiff may move to have it remanded to state court." *Id.* Courts of Appeals ordinarily cannot "rule on the propriety of district court remand orders because they are not reviewable on appeal or otherwise." *Robinson v. Pfizer, Inc.*, 855 F.3d 893, 896 (8th Cir. 2017) (citing 28 U.S.C. § 1447(d)).

### B.     Discussion

The practice of "snap removal" relies on a textual reading of the forum-defendant rule. A forum defendant—i.e., a defendant who is a citizen of the state in which a plaintiff brings an action—engages in snap removal if it removes a case into federal court before the plaintiff formally serves it. By doing so, the defendant technically removes a case before being "properly joined and served" as a forum defendant. 28 U.S.C. § 1446(b)(2). Here, Plaintiffs did not formally serve Defendants before Defendants removed this case. Doc. 21 at 6; doc. 30 at 2 (The Court cites to page numbers as assigned by CM/ECF.). Plaintiffs argue in their Motion to Remand that Defendants' snap removal of this case is improper and accordingly ask this Court to remand this case to state court. Doc. 21 at 6–7.

As of the date of this Order, the Eighth Circuit Court of Appeals has not addressed whether Section 1446 permits snap removal. *See M & B Oil, Inc. v. Federated Mut. Ins. Co.*, 66 F.4th 1106, 1109 (8th Cir. 2023) (discussing snap removal and noting that the Eighth Circuit "ha[s] yet to weigh in on the question"); *Cagle v. NHC Healthcare-Maryland Heights, LLC*, 78 F.4th 1061, 1066 (8th Cir. 2023) (raising but not addressing the propriety of snap removal, and concluding instead that the parties were not completely diverse).

2

And the courts in the Eastern District of Missouri are split on the issue, having endorsed multiple approaches. *See, e.g.*, *Tillman v. BNSF Ry. Co.*, No. 1:20-cv-00178-SNLJ, 2021 WL 842600, at *3 (E.D. Mo. Mar. 5, 2021) (permitting snap removal based on the plain language of the statute); *Laster v. Monsanto Co.*, No. 4:18-cv-00397-CAS, 2018 WL 1566846, at *3 (E.D. Mo. Mar. 30, 2018) (remanding a case removed by snap removal because snap removal is inconsistent with the legislative intent behind the forum-defendant rule and the purpose of removal); *Rogers v. Boeing Aerospace Operations, Inc.*, 13 F.Supp.3d 972, 977–78 (E.D. Mo. 2014) (allowing snap removal only when at least one defendant has been served, based on a construction of the word "any" in Section 1441(b)(2)).  And this Court has not had to address the merits of snap removal until now.  *See Taylor v. Clark Equip. Co.*, No. 4:22-cv-00201-SRC, 2022 WL 1640372, at *6 (E.D. Mo. May 24, 2022) ("Because the parties—whether or not served—are not diverse, the Court need not, and does not, address the propriety of so-called 'snap removal.'"); *Austin v. Harris-Stowe State Univ.*, No. 4:21-cv-00012-SRC, 2021 WL 2313404, at *2 (E.D. Mo. June 7, 2021) ("Because Harris-Stowe failed to show that this case meets the jurisdictional minimum of $75,000, the Court need not address the snap-removal question and remands for lack of subject matter jurisdiction."); *Kelly v. Mercy Hospital South*, No. 4:25-cv-01610-SRC, doc. 20 at 2 n.1 (E.D. Mo. Feb. 12, 2026) ("The Court need not and therefore does not discuss the propriety of snap removal in this order.").

Here, Plaintiffs assert that snap removal "stretch[es] [the statute's] alleged literal meaning beyond a reasonable interpretation."  Doc. 21 at 3.  They claim that "Congress did not intend to create or permit 'snap removal'" and that this "procedural gimmick violates the reason for diversity jurisdiction."  *Id.*  Congress added the words "properly joined and served" to the forum-defendant rule, they assert, to prevent plaintiffs from "join[ing] a forum defendant in a case simply to block removal, with no intention of pursuing the action against the in-state defendant."

3

*Id.* at 4.  But the forum-defendant rule "provided defendants with an opportunity to play games of their own."  *Id.*  Now, defendants can "accomplish[] [removal] by 'hawking' the court dockets in an effort to engage in forum shopping."  *Id.* at 6.  Plaintiffs claim that this is what happened here:  "Defendants removed the case within six (6) days of [Plaintiffs'] filing of the Petition, before the summonses had even been issued by the Circuit Court Clerk."  *Id.*; *see* doc. 33 at 2–3.

Therefore, Plaintiffs contend that "snap removals should not be permitted because they are inconsistent with the intent behind the forum[-]defendant rule and the purposes of removal generally."  Doc. 21 at 4.  They claim that Defendants' interpretation "permits absurd results not intended by the Congress and [the statute] should not be enforced in that manner."  Doc. 33 at 5.  In the alternative, Plaintiffs argue that "the ambiguous wording of Section 1441(b)(2) should properly be interpreted to permit snap removal only after at least one defendant has been served," doc. 21 at 4, or if a defendant is "improperly joined and served," doc. 33 at 5; *see id.* at 3–5 (citing *West Bend Ins. Co. v. Sigler's Auto. & Body Shop, Inc.*, No. 24-cv-11182, 2025 WL 368978, at *2–5 (N.D. Ill. Feb. 3, 2025)).

Defendants respond that "[l]egislative intent is irrelevant because the statutory text is clear."  Doc. 30 at 5.  Here, "Defendants . . . were not served before removal.  Accordingly, under the plain language of the statute, the forum-defendant exception to removal does not apply."  *Id.* at 2.  As a result, Defendants argue, they properly removed this case to federal court. *Id.*

In this tussle between legislative intent and plain, unambiguous textual meaning, the Court finds that the plain text must prevail.  *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011) (noting that "[w]hen the words of a statute are unambiguous, then, . . . [the] judicial inquiry is complete" (cleaned up)).  This Court agrees with

4

Judge Limbaugh's thoughtful and comprehensive textual analysis on the propriety of snap removal in *Tillman*.  *See* 2021 WL 842600 at *2–4.

Under a textual reading of section 1441(b)(2), a forum defendant may properly remove a case before a plaintiff's service of that defendant; the text makes no reference to a plaintiff's opportunity to serve that defendant.  Here, all parties—other than the yet-to-be-identified Doe Defendants 1–5—agree that complete diversity exists among them.  Doc. 21 at 2; doc. 30 at 1, 3; *see also* 28 U.S.C. § 1441(b)(1) (For removal based on diversity jurisdiction, "citizenship of defendants sued under fictitious names shall be disregarded.").  Defendants argue—and Plaintiffs do not dispute—that the amount in controversy exceeds $75,000.  *See* doc. 1 at 2, 6.  *See generally* docs. 21, 33.  So, the parties meet the requirements of diversity jurisdiction.  *See* 28 U.S.C. § 1332(a).

And the parties agree that Defendants are forum defendants who removed this case before service.  Doc. 21 at 6; doc. 30 at 2.  As a result, the forum-defendant rule does not bar Defendants' diversity-jurisdiction-based removal of this case.  Accordingly, under the plain text of 28 U.S.C. § 1441(b)(2), Defendants properly removed this case.  The Court therefore denies Plaintiff's Motion to Remand, doc. 20, and turns to the merits of Defendants' Motion to Dismiss, doc. 22.

## II.   Defendants' Motion to Dismiss

### A.   Background

The Court accepts the following well-pleaded facts as true for purposes of the motion to dismiss.  Christopher J. Marshall was admitted to Mercy Hospital for idiopathic necrotizing pancreatitis after being previously discharged and having to go to the emergency room.  Doc. 5 at ¶¶ 2, 4, 38.  Upon readmission, Mr. Marshall was diagnosed with sepsis and suffered fluid buildup, among other symptoms.  *Id.* at ¶¶ 3, 42–43.

On the night of September 28, 2023, he was in immense pain and was placed on a PCA pump, which requires close monitoring. *Id.* at ¶¶ 6, 45–47. He was also vomiting throughout the night. *Id.* at ¶¶ 6, 48, 50, 52. A hospitalist did not make rounds on him for over 18 hours, even after his vomiting and pain issues were documented in his medical record. *Id.* at ¶¶ 9, 49. When Dr. Halasa finally made a round on Mr. Marshall, the doctor ordered a nasogastric (NG) tube for Mr. Marshall; however, the NG tube's suction was not connected. *Id.* at ¶¶ 11–12, 54–56. Then, a STAT CT and suction were ordered, but the NG tube's suction was, once again, not connected. *Id.* at ¶¶ 13, 15–16, 57–58, 73–74.

A vomiting patient connected to an NG tube suffers the risk of aspiration without suction. *Id.* at ¶¶ 65–66, 75. The CT exam indeed confirmed that Mr. Marshall was at high risk for aspiration. *Id.* at ¶¶ 14, 64. His bed should have been inclined at a minimum of 30 degrees of elevation, but no one increased the incline of his bed. *Id.* at ¶¶ 59–61, 67. Mr. Marshall was not placed in the intensive care unit, despite posing a severe risk for aspiration, nor was he on a sepsis protocol. *Id.* at ¶¶ 7–8, 68–69.

Mr. Marshall then began vomiting and—without any operational suction—aspirated and struggled. *Id.* at ¶¶ 17, 70. A nurse tried rolling him onto his side, but Mr. Marshall continued to aspirate on his vomit. *Id.* at ¶¶ 71–72. Mr. Marshall suffered cardiac arrest from aspiration and died. *Id.* at ¶¶ 17, 76–77. Plaintiffs allege six counts, *see id.* at ¶¶ 82–136; Defendants ask this Court to dismiss or order a more definite statement on Counts IV (medical negligence as a survival action), V (medical negligence as a survival action), VI (medical negligence as a survival action), and VIII (vicarious liability), and ask for dismissal only on Count VII (res ipsa loquitur), *see* doc. 23 at 1. The parties have fully briefed the motion, *see* docs. 22, 23, 32, 35, so the Court now addresses it.

**B.     Standard**

6

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (citation omitted). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). Ordinarily, the Court considers only the facts alleged in the complaint for purposes of a motion to dismiss; however, the Court may consider materials attached to the complaint in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 354–55 (8th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although courts must accept all factual allegations as true, they are not bound to take as true a

7

legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555 (citation modified); *Iqbal*, 556 U.S. at 677–78.

### C.   Discussion

#### 1.   Counts IV, V, and VI:  Plaintiffs' survival actions

In their Petition, Plaintiffs allege three survival actions alleging medical negligence against Mercy Hospital, Dr. Kroeger, and Dr. Halasa for "the suffering [Mr. Marshall] experienced" leading up "to his untimely death."  Doc. 5 at ¶¶ 111, 118, 125; *see id.* at ¶¶ 104–25.  Defendants argue that Plaintiffs did not properly plead these survival actions, because Missouri law does not allow survival actions for negligence resulting in death.  Doc. 23 at 2–4.

Missouri's survivorship statute is codified at Mo. Rev. Stat. § 537.020.  *Mickels v. Danrad*, 486 S.W.3d 327, 330 n.2 (Mo. 2016).  The statute provides a "[c]ause[] of action for personal injuries, other than those resulting in death."  Mo. Rev. Stat. § 537.020.  However, section 537.020 allows survival actions for negligence that does not cause death, even if death later occurs.  *See* Mo. Rev. Stat. § 537.020 ("Causes of action for personal injuries, other than those resulting in death, whether such injuries be to the health or to the person of the injured party, *shall not abate by reason of his death* . . . ." (emphasis added)); *Mickels*, 486 S.W.3d at 329 (allowing a survival action for negligence that did not cause death, even though death later occurred).

Missouri's wrongful-death statute is codified at Mo. Rev. Stat. § 537.080, which provides a cause of action "[w]henever the death of a person results" from a personal injury.  The Missouri Supreme Court has stated that the "language of the survivorship statute and the wrongful death statute are mutually antagonistic."  *Wollen v. DePaul Health Ctr.*, 828 S.W.2d 681, 685 (Mo. 1992).  The "survivorship statute applies when the injury alleged did not cause

death, and the wrongful[-]death statute applies when the injury did cause death." *Id.*  A plaintiff can only bring an "action for personal injuries that result in death . . . under the latter statute." *Mickels*, 486 S.W.3d at 329.

Whether Plaintiffs properly pleaded their survival actions turns, then, on the effect of the negligent acts they allege.  *See Wollen*, 828 S.W.2d at 685.  Here, Plaintiffs pleaded the same negligent acts for both their wrongful-death and survival claims, *compare* doc. 5 at ¶¶ 84–86, *with id.* at ¶¶ 106–08; *id.* at ¶¶ 92–93, *with id.* at ¶¶ 114–15; *id.* at ¶¶ 99–100, *with* ¶¶ 121–22, and—in the wrongful-death portion of their Petition—allege that those acts resulted in Mr. Marshall's death, *see id.* at ¶¶ 86, 93, 100.  Defendants argue that Plaintiffs can therefore only recover for this negligence on a wrongful-death claim.  Doc. 23 at 3; doc. 35 at 4–6; *see Mickels*, 486 S.W.3d at 329.

Plaintiffs respond that "there is a distinct possibility of both claims proceeding to trial as a result of different negligence leading to different harms."  Doc. 32 at 5–6 (emphasis removed). And at this stage of the case, they argue, Missouri law "allows for both claims to be well-pleaded." *Id.* at 5.  They also argue that if Defendants' negligence did not cause Mr. Marshall's death, then their Petition, by pleading in the alternative, would enable them to pursue survival actions for the harm Mr. Marshall incurred before he died.  *See* doc. 32 at 7–8.  Defendants protest that "Plaintiffs do not plead different negligence leading to different harms," and only "plead the same allegedly negligent acts."  Doc. 35 at 6–7 (cleaned up).

The Court agrees with Plaintiffs.  Even though "in enacting [s]ections 537.020 and 537.080, . . . the legislature intended only one recovery," there is a "difficulty . . . that in many cases there may be an honest bona fide dispute . . . as to whether deceased died *as a result of* the injuries." *Harris v. Goggins*, 374 S.W.2d 6, 14 (Mo. 1963) (emphasis added).  And "parties [may] plead claims or defenses in the alternative." *Wallace v. Bounds*, 369 S.W.2d 138, 140–42

9

(Mo. 1963) (noting that parties can plead in the alternative, but where counts are inconsistent, can submit only one count to a jury); *see* Fed. R. Civ. P. 8(d)(2); *cf.* Mo. Rev. Stat. § 509.110.

As discussed, Plaintiffs pleaded the same negligent acts for both their wrongful-death and survival claims. *Compare* doc. 5 at ¶¶ 84–86, *with id.* at ¶¶ 106–08; *id.* at ¶¶ 92–93, *with id.* at ¶¶ 114–15; *id.* at ¶¶ 99–100, *with id.* at ¶¶ 121–22. But if the facts show that some of the negligence Plaintiffs allege caused Mr. Marshall's death, but other negligence caused only his suffering and not death, then Plaintiffs can maintain both actions for different negligent acts or omissions. *See* Mo. Rev. Stat. § 537.080 (providing a cause of action for negligence resulting in death); Mo. Rev. Stat. § 537.020 (providing a cause of action for negligence not resulting in death). Or, Plaintiffs would succeed on their wrongful-death claims if the facts prove that Defendants' negligence caused Mr. Marshall's death, and alternatively succeed on their survival actions if the facts instead prove that Defendants' negligence merely caused Mr. Marshall's suffering up to his death, and not the death itself. *See Mickels*, 486 S.W.3d at 329–31 (reversing trial court's grant of summary judgment on a wrongful-death claim, because the asserted negligence was actionable under a survivorship action for causing injury but not death).

Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' Counts IV, V, and VI. Defendants request, in the alternative, for "a more definite statement to clarify" Plaintiffs' intention to "to plead their survivor actions in the alternative to their wrongful-death actions." Doc. 23 at 4 n.2. Federal Rule of Civil Procedure 12(e) allows a party to "move for a more definite statement of a pleading" if it "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Defendants do not establish why Plaintiffs' Petition is so vague or ambiguous that they cannot reasonably prepare a response. *Id.* Plaintiffs' survival actions allege that, because of Defendants, "Mr. Marshall aspirated and suffered respiratory and cardiac arrest," doc. 5 at ¶¶ 108, 115; *see also id.* at ¶¶ 122–23, while

10

their wrongful-death claims allege that Defendants' negligence caused death as well, *id.* at ¶¶ 86, 93, 100.  The Court finds that Plaintiffs' intention to plead their survival actions in the alternative to their wrongful-death actions is not "so vague or ambiguous that [Defendants] cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

### 2.    Count VII:  Plaintiffs' res ipsa loquitur allegations

Defendants next argue that Plaintiffs' "purported res ipsa loquitur 'cause of action' should be dismissed."  Doc. 23 at 5 (emphasis removed).  Defendants first state that the doctrine of res ipsa loquitur "is a rule of evidence, not a cause of action," and that "[p]leading negligence and res ipsa loquitur as two separate causes of action is redundant."  *Id.* at 4–5.  Defendants also claim that Plaintiff's res ipsa loquitur claim "is not well-pleaded."  *Id.* at 4.  While Defendants' motion does not elaborate on why Plaintiffs do not properly plead this claim, instead only arguing its redundancy, *see id.* at 4–5, Plaintiffs respond that their claim is well-pleaded, *see* doc. 32 at 8–10, and Defendants reply to those arguments with arguments not made in their original motion, *see* doc. 35 at 1–3.

Defendants argue in reply that Plaintiffs have not properly pleaded a res ipsa loquitur claim, because such a claim requires the inference of negligence to be within the common knowledge of a layperson.  *See id.*  "In other words," Defendants assert, Plaintiffs cannot plead a res ipsa loquitur claim because "Plaintiffs cannot prove negligence absent expert testimony."  *Id.* at 3.

Defendants' arguments contradict the Missouri Supreme Court, which clearly states in *Sides v. St. Anthony's Medical Center* that requiring expert testimony does not render a res ipsa loquitur claim dismissible.  *See* 258 S.W.3d 811, 814–22 (Mo. 2008) (en banc).  But the Court agrees with Defendants that Plaintiffs fail to state a res ipsa loquitur claim more generally.  *See* doc. 5.  Because Defendants generally argue that Plaintiffs fail to state a claim, *see* docs. 23, 35,

11

and the Court "may also sua sponte dismiss a case pursuant to Rule 12(b)(6)," the Court dismisses Plaintiffs' res ipsa loquitur claim for failure to plead a necessary element—even though Defendants do not make this argument in their motion. *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (emphasis removed) (citing *Smith v. Boyd*, 945 F.2d 1041, 1042–43 (8th Cir.1991)). And because the Court agrees that Plaintiffs failed to properly plead their claim, it need not address Defendants' other arguments.

To state a res ipsa loquitur negligence claim, a plaintiff must show that "(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; and (c) the defendant possesses superior knowledge or means of information as to the cause of the occurrence." *Sides*, 258 S.W.3d at 814 (quoting *Bass v. Nooney Co.*, 646 S.W.2d 765, 768 (Mo. 1983) (en banc)). "The doctrine is used in cases in which it is not clear exactly what caused an injury, but all the probable causes are within the control or right to control of defendant." *Id.*

Here, Plaintiffs pleaded facts in their Petition to support the first two elements of res ipsa loquitur, but not the third. Plaintiffs do not allege that Defendants "possess[] superior knowledge or means of information as to the cause of" the negligence resulting in Mr. Marshall's death. *Id.*; *see* doc. 5 at ¶¶ 126–32. Because Plaintiffs did not plead one of the necessary elements, the Court dismisses without prejudice their res ipsa loquitur claim for failure to state a claim upon which relief can be granted. *See Crest Constr. II*, 660 F.3d at 354–58 (dismissing a complaint for failure to allege one of the necessary elements); *Schmidt v. Hosley Int'l, Inc.*, No. 4:15-cv-614-CEJ, 2015 WL 4134338, at *2 (E.D. Mo. July 8, 2015) (dismissing a res ipsa loquitur claim because plaintiff's petition did not establish one element); *Grus v. Patton*, 790 S.W.2d 936, 940–41 (Mo. Ct. App. 1990) (upholding trial court's dismissal of a res ipsa loquitur count because

12

none of the essential elements were met); *cf. Sides*, 258 S.W.3d at 822 (finding that res ipsa loquitur was applicable where a plaintiff "was unconscious and ha[d] no knowledge of how the infection occurred, and" alleged that "the defendants ha[d] superior knowledge of how it occurred"). So, the Court grants Defendants' motion to dismiss plaintiffs' Count VII for failure to state a claim.

### 3.    Count VIII:  Plaintiffs' vicarious-liability allegations

Finally, Defendants argue that Plaintiffs cannot plead a vicarious-liability claim against Mercy Hospital for the actions of Doe Defendants 1–5. Doc. 23 at 5–7. Plaintiffs allege that Doe Defendants 1–5 "may include individual healthcare providers who provided health care to decedent Mr. Marshall, such as physicians, nurses, and/or technicians, as well as others involved in provision of the healthcare at issue in this matter." Doc. 5 at ¶ 31. Plaintiffs claim that "Mercy Hospital also employed and/or served as principal for Doe Defendants 1–5." *Id.* at ¶ 135.

Defendants argue that "Plaintiffs fail to state a claim for vicarious liability as to the unidentified persons" because they do not allege "the identity of the hospital staff and nurses, how they were allegedly negligent, and their employment relationship with Mercy Hospital." Doc. 23 at 5–6. And "Plaintiffs' allegations that unidentified 'care personnel' and 'all nursing staff' were employed by Mercy Hospital and negligent are speculative, conjecture, and bald assertions." *Id.* at 6. "Plaintiffs do not identify any employee nurse or staff for whom they seek to hold Mercy Hospital liable, what any such nurse staff member did that was negligent, or how that alleged negligence led to Decedent's death." Doc. 35 at 4.

Therefore, they claim that "Plaintiff's vicarious liability/*respondeat superior* count should be dismissed as to all unidentified persons." Doc. 23 at 6. Defendants also note that "Missouri has abolished common law medical malpractice and replaced it with a statutory cause

13

of action," under which Mercy Hospital "could only be liable . . . for its employees' actions or omissions." *Id.*; *see also* Mo. Rev. Stat. § 538.210.1 (replacing any common law cause of action "for personal injury or death arising out of the rendering of or failure to render health care services" with a "statutory cause of action for damages"); Health Care Providers—Statutory Cause of Action, 2015 Mo. Legis. Serv. S.B. 239 (West) (adding Mo. Rev. Stat. § 538.210.1); Mo. Rev. Stat. § 538.210.4.

In response, Plaintiffs cite a 2002 Missouri Court of Appeals case saying that "[t]he doctrine of respondeat superior imposes upon an employer vicarious liability for the negligent acts or omissions of his employee or agent that are committed within the scope of the employment or agency." Doc. 32 at 10–11 (emphasis removed) (citing *Scott v. SSM Healthcare St. Louis,* 70 S.W.3d 560, 566 (Mo. App. E. Dist. 2002)). And then Plaintiffs reassert that they pleaded vicarious liability based on the negligence of Mercy Hospital's "employees and agents." *Id.* at 11.

Missouri law previously defined "employees" for vicarious-liability purposes with "reference to common-law principles of agency." *Jefferson ex rel. Jefferson v. Missouri Baptist Med. Ctr.*, 447 S.W.3d 701, 713 (Mo. Ct. App. 2014). "[T]he technical distinction between an 'agent' and an 'employee' [wa]s of relatively minor significance." *Id.* But then the Missouri legislature amended the law in 2017 to "define[] employee as any individual who is directly compensated by a health[-]care provider for health[-]care services." *Williams v. US Dep't of Health & Hum. Servs.*, No. 4:21-cv-01049-MTS, 2022 WL 3541691, at *2 (E.D. Mo. Aug. 18, 2022) (cleaned up); *see also* Mo. Rev. Stat. § 538.205(3); Medical Malpractice—Vicarious Liability, 2017 Mo. Legis. Serv. H.B. 452 (West) (adding Mo. Rev. Stat. § 538.205(3)). The amendments also added subsection four to section 538.210, which provides that a health-care provider is not liable "based on the actions or omissions of any other entity or individual *who is*

14

*not an employee* of such health care provider." *See id.* (adding Mo. Rev. Stat. § 538.210.4); *see also* Mo. Rev. Stat. § 538.210.4 (emphasis added).

So, a plaintiff may not recover against an entity "for the alleged negligence of [a third party] if [that party] is not an employee of [the entity]." *Wilcox v. United States*, 881 F.3d 667, 670 (8th Cir. 2018); *see id.* (finding that a doctor with staff privileges to use a hospital's facilities to practice medicine was not an employee of that hospital, absent an employment contract between them).

Based on this, Defendants object that Plaintiffs have not pleaded sufficient facts regarding who these Doe Defendants are (to determine whether Mercy Hospital can be liable for their actions or omissions under section 538.210.4) or what they did that resulted in Mr. Marshall's death or suffering (to determine whether their actions or omissions were negligent). Doc. 23 at 5–7.  The Court agrees with Defendants.  "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).

Plaintiffs allege that Doe Defendants 1–5 "may include individual healthcare providers who provided health care to decedent Mr. Marshall, such as physicians, nurses, and/or technicians, as well as others involved in provision of the healthcare at issue in this matter." Doc. 5 at ¶ 31.  Plaintiffs' use of the words "may include" suggests that the ensuing list of roles is non-exhaustive, which makes unclear the exact employment capacity under which Doe Defendants acted.  *See U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 390 (2018) (noting that the use of the word "includes" suggests a "non-exhaustive" list); *see also Include*, *Black's Law Dictionary* (12th ed. 2024).  Then,

15

Plaintiffs claim that "Mercy Hospital also employed and/or served as principal for Doe Defendants 1–5." *Id.* at ¶ 135.  In light of the amendments to Missouri law, Mercy Hospital is only liable if it employed, i.e. "directly compensated," Doe Defendants 1–5.  Mo. Rev. Stat. § 538.205(3).  Because it is unclear whether Mercy Hospital employed these defendants, or merely acted as their principal in another capacity, the scope of Mercy Hospital's vicarious liability—if any—is unclear.

Also unclear is what negligent actions or omissions these Doe Defendants took to make Mercy Hospital vicariously liable for their actions.  Plaintiffs' Petition contains various paragraphs alleging negligent acts and omissions without specifying all of actors responsible. *See, e.g.*, doc. 5 at ¶¶ 7–8, 68–69 (noting that Mr. Marshall was neither on sepsis protocol, nor in the intensive care unit without specifying whether any of the Doe Defendants, if any, acted negligently in causing this); ¶¶ 59–61, 67 (noting that Mr. Marshall's bed was not properly inclined, without specifying whether any of the Doe Defendants, if any, acted negligently in causing this).

Plaintiffs appear to identify one Doe Defendant as "the nurse who was unable to operate suction in Mr. Marshall's hospital room," but the Petition has scant detail regarding the identities of the other Doe Defendants.  *Id.* at ¶ 134.  Plaintiffs allege that "Defendant Mercy Hospital is vicariously liable for the tortious acts or omissions of these individual healthcare providers as otherwise alleged herein," *id.* at ¶ 135, but without information regarding the employment capacities and negligent acts of each Doe Defendant, it is unclear what the "nature and basis or grounds for a [vicarious-liability] claim" are against Mercy, if any.  *Topchian*, 760 F.3d at 848.

Defendants argue that "Plaintiffs should be required to plead with more specificity to identify the persons whose conduct is alleged to have been negligent."  Doc. 23 at 7.  The Court agrees.  As discussed above, Federal Rule of Civil Procedure 12(e) allows a party to "move for a

16

more definite statement of a pleading" if it "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Because Defendants move for a more definite statement, the Court orders Plaintiffs to file an amended complaint, no later than July 14, 2026 with a more definite statement pleading the Doe Defendants' alleged negligent acts or omissions, and employment capacity. *See Troupe v. Young*, 143 F.4th 955, 967 (8th Cir. 2025) (allowing pleading "upon information and belief" when "the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible" (quoting *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023)); *Bennett v. Berg*, 710 F.2d 1361, 1364–65 (8th Cir. 1983) (reversing a district court's dismissal of a count and recommending consideration of a Rule 12(e) motion when it was unclear whether a complaint adequately alleged one element of a cause of action); *Bull v. Freedom Mortg. Corp.*, No. 4:15-cv-00681-KGB, 2016 WL 10591165, at *3 (E.D. Ark. June 22, 2016) (ordering a more definite statement when it was unclear what a defendant's exact role and actions in the case were).

## III.    Conclusion

Accordingly, the Court denies Plaintiffs' [20] Motion to Remand. Additionally, Defendants move to file a sur-reply, doc. 34, to Plaintiffs' reply to this motion, doc. 33. The Court denies the [34] motion as moot. The Court also grants in part Defendants' [22] Motion to Dismiss and orders Plaintiffs to file a more definite statement regarding Count VIII by July 14, 2026. An Order of Partial Dismissal accompanies this Memorandum and Order.

So ordered this 30th day of June 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

17